## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| RIGOBERTO LUIS VEGA, | § | |
| # 01338941 | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 3:14-CV-0551-P-BK |
| | § | |
| WILLIAMS STEPHENS, Director | § | |
| TDCJ-CID, | § | |
| Respondent. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Petitioner, a Texas state prisoner, filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254, which was automatically referred to the United States Magistrate Judge.  *See* 28 U.S.C. § 636(b) and *Special Order 3*.  For the reasons that follow, it is recommended that the petition be dismissed.

### I. BACKGROUND

On November 10, 2005, Petitioner pled guilty to aggravated sexual assault of a child, and was sentenced to 30 years' imprisonment.  *State v. Vega*, No. F04-73506 (Criminal District Court No. 4, Dallas County, 2005).  He did not pursue a direct appeal, and shortly thereafter unsuccessfully sought state habeas relief.  *See Ex Parte Vega*, No. WR-66-055-01 (Tex. Crim. App. Nov. 8, 2006) (denying state habeas application) [Doc. 12-5 at 2].  In 2012, he filed a motion for DNA testing, which was denied in June 2014.  *See State v. Vega*, No. F04-73506 (Criminal District Court No. 4, Dallas County, Jun. 13, 2014) (order available on Dallas County website).  Subsequently, Petitioner sought state habeas relief, but his application was dismissed as successive.  *See Ex Parte Vega*, No. WR-66-055-02 (Tex. Crim. App. Dec. 11, 2013) [Doc. 12-2 at 2].

On February 13, 2014, Petitioner filed this federal habeas petition alleging actual innocence and ineffective assistance of trial counsel based on documents first disclosed by the State in response to the motion for DNA testing.  [Doc. 4 at 1-4].   As the petition appeared time barred, the Court initially directed Petitioner to respond regarding the application of the one-year statute of limitations.  [Doc. 6].  The State then filed a preliminary response addressing the limitations period, as directed by the Court, and Petitioner filed a reply.  [Doc. 13; Doc. 18].

## II. ANALYSIS

Petitioner filed his federal petition well beyond the one-year limitations period.  *See* 28 U.S.C. § 2244(d)(1)(A) (a state prisoner ordinarily has one year to file a federal habeas petition, starting from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review").  Since he did not pursue a direct appeal, Petitioner's conviction became final on December 10, 2005, thirty days after the November 10, 2005, judgment.  *See* Tex. R. App. P. 26.2(a)(1).  The one-year limitations period, thus, began running on December 11, 2005.  Even, statutorily tolling the limitations period during the pendency of his first state habeas application (from its signing on July 5, 2006, through its denial on November 8, 2006), see 28 U.S.C. § 2244(d)(2), the one-year period expired on April 17, 2007, almost seven years before he filed the instant federal petition on February 7, 2014.[1]

---

[1] The *pro se* federal petition is deemed filed on February 7, 2014, the date on which Petitioner signed it and most probably placed it in the prison mail system.  [Doc. 3 at 10].  *See* Rule 3(d) of the Rules Governing Section 2254 Proceedings ("mailbox rule" applicable to inmates who use jail/prison's internal mailing system).   Moreover, because the second state habeas application and the motion for DNA testing were filed long after the limitations period expired, they did not toll the limitations period under section 2244(d)(2).  *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (no statutory tolling if state application or "other collateral review" is filed after one-year period).

*Date on Which Factual Predicate of Claims Could Have Been Discovered*

On the issue of limitations, Petitioner relies on 28 U.S.C. § 2244(d)(1)(D), which provides that the one-year period is calculated from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." He asserts that he could not have discovered the factual predicate of his ineffective assistance of counsel claims through the exercise of due diligence until he received the State's April 25, 2013 response to his motion for DNA testing.  [Doc. 6 at 1-2].  Respondent suggests Petitioner is "confuses the factual predicate (i.e., [his] purported innocence, which he would necessarily have known when he was convicted), with his purported proof thereof."  [Doc. 13 at 4].  The Court agrees.

Petitioner raises four claims of ineffective assistance of counsel, which are all tied to counsel's performance during the guilty plea proceedings.  He contends:

- counsel rendered ineffective assistance when he lied to Petitioner that "his DNA was found in the vagina of the alleged victim" and, thus, "coerce[d] applicant to involuntarily plead guilty";

- counsel rendered ineffective assistance when he failed to disclose to Petitioner the victim's mother's affidavit and failed to investigate it; and

- counsel rendered ineffective assistance when he failed to proceed to trial "with a defense of fabrication based on the affidavit," and failed to interview the victim and her mother.

[Doc. 4 at 1-4].   In support, he argues that a January 2005 forensic biology report, a September 2004 affidavit from the victim's mother, and a September 2004 offense incident report (copies are attached to the State's response as exhibits) were previously unavailable to him.  [Doc. 6 at 1-2; Doc. 18 at 4; Doc. 13-1 at 2 and 11-18, for State's response to DNA motion and exhibits].

Petitioner's arguments fail.  The reports and affidavit in question were generated long before Petitioner pled guilty.  While Petitioner now claims he was unaware of the content of the documents, he fails to show that he could not have discovered the information before he pleaded guilty.  He merely avers in a conclusory fashion that the reports and affidavit were "not made aware to [him] by the State, or [his] court appointed attorney during" the guilty plea proceedings. [Doc. 18 at 6].   He notes that the documents were not part of the trial court's transcripts/records that he purchased in June/July 2012.  [Doc. 6 at 1].  However, "discovery of the claim's 'factual predicate'" is all that is required, not the discovery of the legal basis or evidence supporting the claim.  *See* *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) (rejecting prisoner's assertion that the one-year period begins when he "actually understands what legal theories are available"). Because the ineffectiveness claims at issue here relate to Petitioner's guilty plea for aggravated sexual assault of a child, the Court concludes that the factual predicate, namely the vital or principal facts underlying those claims, could have been discovered before his conviction became final.  *See* McAleese v. Brennan, 483 F.3d 206, 214 (3rd Cir. 2007) ("[T]he factual predicate . . . constitutes the vital facts underlying those claims."); *see also* *Rivas v. Fisher*, 687 F.3d 514, 535 (2d Cir. 2012) ("The facts vital to a habeas claim are those without which the claim would necessarily be dismissed under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts . . . or Rule 12(b)(6) of the Federal Rules of Civil Procedure.").

Moreover, contrary to Petitioner's belated claims of actual innocence, the record supports the opposite conclusion.  In denying Petitioner's motion for DNA testing, the trial court found that "identity was not and is not an issue in this case."  *See* Jun. 13, 2014 Order in No. F04-

73506 (available on the Dallas County website).  Petitioner was related to the victim, resided in the same home as the victim, and was identified as the only person in the room with the victim at the time of the offense.  [Doc. 13-1 at 6].  Furthermore, defense counsel affirmed (in response to the first state habeas application, which raised related ineffective assistance claims) that Petitioner never claimed his innocence and actually admitted having consensual sex with the thirteen-year-old victim.  [Doc. 12-5 at 30].  Defense counsel also averred that he had fully advised Petitioner of all his rights and of the consequences of entering a guilty plea.  [Doc. 12-5 at 30].  Finally, neither the 2005 Forensic Biology Report nor the 2004 affidavit of the victim's mother and incident report provide any support for Petitioner's assertions of ineffective assistance of counsel.

Based on the above, the Court concludes that Petitioner has not carried his burden of proving that he exercised due diligence in discovering the factual predicate of his ineffective assistance claims.  *See Dabbs v. Thaler*, No. 3:12-CV-0597-L-BK, 2012 WL 4442414 *3 (N.D. Tex. 2012), recommendation accepted, 2012 WL 4458402 (N.D. Tex. 2012) (the petitioner bears the burden of establishing the applicability of section 2244(d)(1)(D), including his due diligence); *see also Starns v. Andrews*, 524 F.3d 612, 618 (5th Cir. 2008) (collecting cases addressing due diligence in learning of factual predicate of a claim).  Accordingly, Petitioner's assertion that the one-year limitations period did not begin to run until April 2013 is without merit, and his federal petition is clearly outside the one-year statute of limitations.

## *Actual Innocence*

Despite the fact that he pled guilty to aggravated sexual assault of a child, Petitioner requests the Court to consider his actual innocence claim.  While a claim of actual innocence

may provide "a gateway through which a petitioner may pass" when the limitations period has elapsed, "tenable actual-innocence gateway pleas are rare." *McQuiggin v. Perkins*, ––– U.S. –––, 133 S. Ct. 1924, 1928 (2013). To meet the threshold requirement, a petitioner must present new evidence in support of his claim and "'show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* at 1935 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Here, Petitioner presents no newly discovered evidence that would undermine this Court's confidence regarding the state court's findings of guilt. Relying on the January 12, 2005, Forensic Biology Report, he alleges "his DNA was never found inside or on the alleged victim." [Doc. 4 at 1]. However, as noted in the State's response to the DNA motion, and reiterated in the trial court's order deny the DNA motion, identity was not an issue in the state criminal case. [Doc. 13-1 at 6]. Petitioner was related to the victim and lived in the same house at the time of the offense. [Doc. 13-1 at 6]. Moreover, the victim's mother identified him as the only person in the room with the victim at the time of the alleged offense. [Doc. 13-1 at 6].

Petitioner also relies on the affidavit of the victim's mother. He asserts that the victim's mother "lied to her daughter, falsely telling her that the Applicant had told her that they had had sexual intercourse in order to force [the] alleged victim to accuse Applicant." [Doc. 4 at 1]. However, that the victim's mother used "lies to see if [she] could get something out of her" daughter [Doc. 6 at 10], as she conceded, does not support Petitioner's claim of actual innocence. Petitioner has failed to present a credible claim of actual innocence by producing new evidence that is sufficient to persuade this Court that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Perkins*, 133 S. Ct. at 1928 (quoting Schlup v. Delo,

513 U.S. 298, 329 (1995)).  Accordingly, the "actual innocence" exception is not applicable to

this case, and Petitioner's federal petition should be dismissed as time barred.  *See id.* at 1936

(actual innocence gateway is available only when a movant presents "evidence of innocence so

strong that a court cannot have confidence in the outcome of the trial unless the court is also

satisfied that the trial was free of nonharmless constitutional error.") (quotations and quoted case

omitted).

*Equitable Tolling*

Lastly, Petitioner fails to present any fact that could support equitable tolling.  To be

entitled to equitable tolling, a petitioner must show "(1) that he has been pursuing his rights

diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely

filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quotations and quoted case omitted);

s*ee also Holland v. Florida*, 560 U.S. 631, 635 (2010) (recognizing one-year statutory deadline

is subject to equitable tolling in appropriate circumstances).  "'Courts must consider the

individual facts and circumstances of each case in determining whether equitable tolling is

appropriate.'" *Mathis v. Thaler*, 616 F.3d 461, 474 (5th Cir. 2010) (quoted case omitted).

Petitioner's filings, even when liberally construed in accordance with his *pro se* status, do

not present due diligence or "rare and exceptional circumstances" warranting equitable tolling.

*See Howland v. Quarterman*, 507 F.3d 840, 845-846 (5th Cir.  2007) (summarizing cases).

Petitioner has failed to explain the lengthy delays in this case.  *See Coleman v. Johnson*, 184

F.3d 398, 403 (5th Cir. 1999) (unexplained delays do not evince due diligence or rare and

extraordinary circumstances).  "Equity is not intended for those who sleep on their rights."

*Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999).  Here, Petitioner did not challenge his

conviction for over six years and nine months before filing his Motion for DNA testing. Furthermore, neither Petitioner's *pro se* status nor his unfamiliarity with the law suffices as a basis for equitable tolling.  *See Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000) ("proceeding *pro se* is not a 'rare and exceptional' circumstance because it is typical of those bringing a § 2254 claim."); *Turner v. Johnson*, 177 F.3d 390, 391-392 (5th Cir. 1999) (*per curiam*) ("neither a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling.").

Accordingly, the Court concludes that Petitioner cannot carry his burden of establishing that equitable tolling is warranted in this case.  *See Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002) (party seeking equitable tolling has burden of showing entitlement to such tolling).

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that the petition for writ of habeas corpus be **DISMISSED** with prejudice as barred by the one-year statute of limitations.

SIGNED March 30, 2015.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See* *Douglass v. United Services Automobile Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996)*.


RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE